[Cite as *Trainer v. Trainer*, 2024-Ohio-1581.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| VERONICA TRAINER, | : | |
| Plaintiff-Appellee / Cross-Appellant, | : | |
| | : | No. 112384 |
| v. | : | |
| MICHAEL P. TRAINER, SR., | : | |
| Defendant-Appellant / Cross-Appellee. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 25, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-11-335282

---

### *Appearances:*

Law Offices of James P. Reddy, Jr., and James P. Reddy, Jr., *for appellee / cross-appellant*.

Taft Stettinius & Hollister LLP, Carl A. Murway, and Mary Kate McClain, *for appellant / cross-appellee*.

MARY J. BOYLE, J.:

{¶ 1} Former spouses, appellant/cross-appellee, Michael P. Trainer, Sr., ("Husband"), and appellee/cross-appellant, Veronica Trainer ("Wife"), appeal and cross-appeal the judgment entries issued by the domestic relations court granting a

modification of Husband's spousal support obligation, raising the following assignments of error for review:

## Husband's Assignments of Error

**Assignment of Error One:** The trial court erred when it failed to terminate spousal support.

**Assignment of Error Two:** The trial court erred when it ordered spousal support for an indefinite duration.

**Assignment of Error Three:** The trial court erred in its findings as to the parties' incomes.

> A. The trial court erred when it considered [Husband's] income from assets but not [Wife's] income from assets.

> B. The trial court erred when it considered [Husband's] social security income but not [Wife's] social security income.

**Assignment of Error Four:** The trial court erred when it ordered spousal support to [Wife] in the amount of $2,500 per month.

## Wife's Cross-Assignments of Error

**Cross-Assignment of Error One:** The trial court erred in denying [Wife's] motion for summary judgment.

**Cross-Assignment of Error Two:** The trial court erred in finding there are requisite changed circumstances to modify the spousal support.

**Cross-Assignment of Error Three:** The trial court erred in its spousal support modification.

**Cross-Assignment of Error Four:** The trial court erred in granting [Husband's] motion to stay the collection and disbursement of spousal support during the pendency of the case.

**Cross-Assignment of Error Five:** The trial court erred in denying [Wife's] motion for an accounting, motion for discovery sanctions, and motion for continuance.

{¶ 2} After careful review of the record and relevant case law, we affirm.

## I. Facts and Procedural History

{¶ 3} We begin our discussion with the pertinent facts and procedural history necessary to resolve the parties' assigned errors.

{¶ 4} Husband and Wife were married in June 1985, and two children were born of this marriage. Both children were emancipated at the time Wife initiated the divorce proceedings in 2011. In March 2013, the parties proceeded to trial, where they entered into an in-court agreement. This agreement, signed only by Husband and Wife, was marked as exhibit No. 1 and incorporated by reference in the trial court's final entry of divorce issued on May 14, 2013. As part of their agreement, the parties' marital assets were equally divided. Additionally, commencing on the first day after Wife vacated the marital residence, Husband was ordered to pay "[Wife] the sum of Twelve Thousand Dollars ($12,000.00) per month, plus two percent (2%) processing fee, as and for spousal support until further order of court."

{¶ 5} On July 30, 2013, the court issued an agreed judgment entry indicating that Wife vacated the marital home as of June 1, 2013, and Husband's "modified spousal support obligation as set forth in the Judgment Entry of Divorce therefore commenced on June 1, 2013 in the amount of $12,000, plus the 2% processing charge." The court further stated:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Cuyahoga County Child Support Agency shall immediately commence withholding the $12,000 monthly spousal support obligation from the [Husband]'s wages as set forth in the Judgment

Entry of Divorce, together with a two percent (2%) processing charge, for a total of $12,240.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that [Husband] made direct payments of his spousal support obligation to [Wife] for June 2013 in the amount of $ 6,461; and for July 2013, in the amount of $6,461.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that CSEA shall correct its records to reflect [Husband]'s direct spousal support payments in the amount of $12,922.

(Judgment Entry, July 30, 2013.)

{¶ 6} Nearly six years later, Husband filed a motion to modify spousal support in February 2019, requesting the court to decrease or terminate his $12,000 per month spousal support obligation because he "is retiring from his employment effective July 1, 2019, and as a result there will be a substantial change in his income." In his supporting affidavit, Husband averred that

I was ordered to pay [Wife] the sum of $12,000 per month, plus processing fee, until further order of court. The award was of an indefinite duration and subject to the continuing jurisdiction of this Court for purposes of modification pursuant to Ohio Revised Code Section 3105(E).

I have been employed as CFO and Treasurer of Akron Children's Hospital since the time of my divorce on May 14, 2013, and have paid all sums due and owing as spousal support since that date. I am sixty-eight (68) years old, having been born on March 27, 1950.

I will retire from my employment at Akron Children's Hospital effective July 1, 2019, at which time I will be sixty-nine (69) years old and as a result of my retirement there will be a substantial decrease in my income.

(Motion, Feb. 5, 2019.)

{¶ 7} In response, Wife, filed five pro se motions — a motion denying termination, a motion to retroactively increase support payments, a motion to order payment of all property divisions, a motion for accounting, and a motion for discovery sanctions. In June 2019, both parties filed motions to strike and Wife filed a pro se motion to dismiss.

{¶ 8} The matter proceeded to a hearing before the magistrate on October 3, 2019, and was continued to December 20, 2019. Present at the hearing were Wife, pro se, and Husband, along with his two attorneys. On December 20, 2019, the court granted Husband's motion to stay disbursement of all spousal support payments, which was filed on November 21, 2019. The following relevant evidence was presented at the hearing.

{¶ 9} At the time of the hearing, Wife was 60 years old and Husband 69 years old. Wife has a bachelor's degree in business administration, which she earned during the marriage. Husband attended two years of community college followed by Baldwin-Wallace College where he graduated with an accounting degree. Later, he became a certified public accountant.

{¶ 10} On LinkedIn, Wife describes herself as "an experienced entrepreneur with a demonstrated history of working in the restaurant industry. Strong business development professional skilled in nonprofit organizations, research, staff development, strategic planning, and program development." Wife was CEO of a magazine called Lady's Gallery, a hobby business, but did not make any money.

{¶ 11} At the time of the hearing, Wife was the CEO of Roxa Acai Café, a business opened with their son in Santa Cruz, California but was not yet open at the time of the hearing. The Café is described as the first and only hammock café in the United States. Wife did not know what her salary would be at this start up. The evidence revealed that Wife contributed approximately $635,000 into the Café, including $250,000 from a 401K plan that was transferred to the corporation's business account. According to the testimony, Wife is entitled to receive $513 a month in social security benefits once she turns 67.5.

{¶ 12} Throughout the marriage, Wife volunteered and was an education advocate for their son. According to Wife, the son was bullied in high school and suffers from anxiety and PTSD. The party's daughter testified that Wife's mental health deteriorated due to Husband's emotional abuse, and it affects her ability to work a full-time job.

{¶ 13} At the time of divorce, Husband was employed at Akron Children's Hospital as its Chief Financial Officer. He worked there from early 2008 to July 2019, when he retired. He received his last paycheck in August 2019. Husband's 2013 gross income was $527,677 and his 2018 gross income totaled $643,197. Husband received a base salary and was eligible for a bonus while at Akron Children's Hospital. Husband testified that he retired due to age, health issues, stress, family history of dementia, an administration change at the hospital, and the hospital's financial well-being. Husband told Wife in November 2018 that he was going to retire in 2019.

{¶ 14} Husband testified that after the divorce he contributed the maximum amount to his retirement and that he planned to start receiving his social security in 2020 with an estimated benefit of $3,800 per month, but he had not yet applied. Husband also prepares tax returns in the evenings and on weekends, which he has been doing for decades. He stated that he was scaling down, and planned to be finished after 2019. In 2018, Husband's reported income netted $3,908 from his tax preparation business. Husband stated that his estimated annual income post-retirement is $63,680.

{¶ 15} The evidence presented at the hearing revealed that the parties each have substantial retirement and investment accounts and also own multiple vehicles and/or homes with no mortgage or loan payments, except that Husband's Hudson home has a mortgage. Both Wife and Husband also have substantial checking and/or savings accounts. In addition, after the divorce Wife received a check in November 2019 for nearly $25,000 for Husband's paid time off payout, and Husband inherited approximately $800,000 cash from his deceased brother.

{¶ 16} There was discussion of Husband's mother's assets at the hearing, which was resolved at the time of the divorce. Wife had two checks for approximately $230,000 from a joint account she had with Husband's mother. Wife put these checks into another bank account in her name after the divorce, and then gave Husband $175,000 per their in-court agreement. Wife testified that any money she had left went toward a condo in Aurora, furniture, and an automobile.

**{¶ 17}** Following the conclusion of the hearing, the magistrate allowed the parties to submit written closing arguments, which Husband filed in January 2020 and Wife filed in March 2020. On August 25, 2020, an attorney for Wife entered an appearance and filed a motion for summary judgment, seeking to dismiss Husband's motion to modify spousal support. Husband opposed the motion. On June 4, 2021, the court issued two decisions. In one decision, the court denied Wife's motion for summary judgment and found that "the parties have jurisdiction to modify spousal support based upon the express language in the Divorce decree." In the other decision, the magistrate modified Husband's support to $2,500 per month, plus two percent processing fee, until further order of court. The magistrate further found that the spousal support shall terminate upon the death of either party or Wife's remarriage or cohabitation with an unrelated male tantamount to remarriage. Both parties filed objections to this decision. Wife also filed a notice of appeal from the trial court's June 4, 2021 decision to this court in *Trainer v. Trainer*, 8th Dist. Cuyahoga No. 110630. This appeal was dismissed by our court in August 2021 for lack of final appealable order.

**{¶ 18}** Then on December 30, 2021, the trial court, after conducting its independent review, issued an order overruling in part and sustaining in part the parties' objections. The trial court returned the matter to the magistrate, ordering the magistrate to quantify the parties' respective incomes including clarification as to how or why [the magistrate] arrived at the $2,500 a month spousal support amount." (Judgment entry, Dec. 30, 2021.)

{¶ 19} The magistrate issued an "Amended Decision" on May 19, 2022. In this decision, the magistrate added the following findings:

> The Court will impute [Wife] an income of $25,000 based upon her work history, investment in the restaurant and its potential, and her education. She will also receive roughly $6,000 from social security at the age of 66 and 10 months for a total annual income of $31,000.
>
> * * *
>
> [Husband's] approximate retirement income is anticipated at $63,700 from his prior employment, which seems low (based upon his actual salary at Akron's Children hospital and his additional retirement plans) and $45,600 from social security for a total of $109,000. Based upon all of these factors, the Court determined that [Wife] receives $2,500 x 12 months for a yearly total of $30,000 as spousal support results in a fair spousal obligation. [Husband's] Motion to Modify Support is granted and, effective February 5, 2019, [Husband] is ordered to pay to [Wife] the sum of $2,500 per month for spousal support until further order of the Court.

(Emphasis deleted.) (Amended Magistrate's Decision, May 19, 2022.)

{¶ 20} The parties again filed objections to the magistrate's amended decision. On January 12, 2023, the trial court issued two judgment entries. One explained its reasoning for overruling the parties' objections and the other adopted the magistrate's amended decision, in its entirety. Thus, the court granted the Husband's motion to modify and the Wife's motion to deny termination, in part. Furthermore, the court denied all other motions, except that it granted in part Husband's motion to redact irrelevant items from Wife's affidavit. The trial court then ordered:

> **IT IS ORDERED, ADJUDGED, AND DECREED** that effective on February 5, 2019, [Husband] shall pay to [Wife] the sum of Two Thousand and Five Hundred Dollars ($2,500.00) per month, plus two percent (2%) processing fee, as and for spousal support **until further**

**order of court**.  The spousal support shall terminate upon the death of [Wife] or [Husband] or [Wife's] remarriage or cohabitation with an unrelated male tantamount to remarriage.   The Court retains jurisdiction to modify the spousal support order.

* * *

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the parties work together to complete the final two QDRO to facilitate the division of [Husband's] Lincoln (nka Valic) account and [Husband's] annuity within sixty days of journalization of this order.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that CJFS-OCSS shall release the stay of disbursement and determine based upon the newly modified spousal support order how the monies currently on hold shall be disbursed.  CJFS-OCSS shall adjust its records accordingly.

(Emphasis deleted.)  (Judgment entry, Jan. 12, 2023.)

{¶ 21}  It is from these orders that Husband appeals and Wife cross-appeals. We will combine our discussion because all of the assigned errors relate to the post-decree modification of spousal support.

## II.  Law and Analysis

### A. Standard of Review

{¶ 22} We review spousal support issues under an abuse of discretion standard.  *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).  A trial court abuses its discretion when it exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority."  *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E. 3d 463, ¶ 35.

### B. Spousal Support

#### 1. Modification

{¶ 23} Generally, spousal support can be modified only if the decree or agreement included language reserving the court's jurisdiction to do so. Wife argues there was no change in circumstance because Husband was not yet retired at the time he filed his motion to modify spousal support and the court did not have jurisdiction to modify the support order.

{¶ 24} R.C. 3105.18, which governs the award and modification of spousal support, provides, in relevant part:

> (E) If a continuing order for periodic payments of money as alimony is entered in a divorce * * * that is determined on or after January 1, 1991, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:
>
> (1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.
>
> (2) In the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.
>
> (F)(1) For purposes of divisions (D) and (E) of this section and subject to division (F)(2) of this section, a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances so long as both of the following apply:
>
> > (a) The change in circumstances is substantial and makes the existing award no longer reasonable and appropriate.
> >
> > (b) The change in circumstances was not taken into account by the parties or the court as a basis for the existing award when it

was established or last modified, whether or not the change in circumstances was foreseeable.

(2) In determining whether to modify an existing order for spousal support, the court shall consider any purpose expressed in the initial order or award and enforce any voluntary agreement of the parties. Absent an agreement of the parties, the court shall not modify the continuing jurisdiction of the court as contained in the original decree.

{¶ 25} Upon review, we find that the court's May 14, 2013 final divorce decree expressly reserved jurisdiction of spousal support modifications. Because the spousal support provision agreed to by the parties in their in-court agreement specifically included the language "until further order of court" regarding the amount of spousal support ordered, the trial court retained jurisdiction to modify it. *Phillips v. Phillips*, 11th Dist. Trumbull No. 2006-T-0128, 2007-Ohio-6245, ¶ 20 (trial court retained jurisdiction where "until further order of the court" was included at the end of the divorce decree). *Mizenko v. Mizenko*, 8th Dist. Cuyahoga No. 78409, 2001 Ohio App. LEXIS 2514, 9 (June 7, 2001) ("until further order of the court" used within body of the paragraph specifying support obligations is sufficient to reserve jurisdiction to modify the support award), citing *Kearns v. Kearns*, 69 Ohio App. 3d 305, 590 N.E.2d 797 (9th Dist.1990); *Meinke v. Meinke*, 56 Ohio App. 3d 171, 565 N.E.2d 875 (6th Dist.1989); *Martin v. Martin*, 8th Dist. Cuyahoga No. 63777, 1992 Ohio App. LEXIS 6420 (Dec. 17, 1992).

{¶ 26} Therefore, Wife's first cross-assignment of error is overruled.

{¶ 27} Having found that the court had jurisdiction to modify spousal support, we must next examine whether Husband met "a change of circumstances" and that the change was not contemplated at the time of the original decree as set

forth in R.C. 3105.18(E) and (F). The party seeking the modification of spousal support has the burden of establishing that a modification is warranted. *Brzozowski v. Brzozowski*, 8th Dist. Cuyahoga No. 101013, 2014-Ohio-4820, ¶ 20.

{¶ 28} The goal of spousal support is to reach an equitable result and there is no set mathematical formula to reach this goal. *Hloska v. Hloska*, 8th Dist. Cuyahoga No. 101690, 2015-Ohio-2153, ¶ 11, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988). R.C. 3105.18(C)(1)(a)-(n) aids courts in determining whether the existing support order should be modified due to a significant change in circumstances. These factors include: (a) the parties' income from all sources, including income derived from the property division made by the court; (b) the relative earning abilities of the parties; (c) the parties' ages and physical, mental, and emotional conditions; (d) the parties' retirement benefits; (e) the duration of the marriage; (f) minor child; (g) the standard of living during the marriage; (h) the parties' education; (i) the relative assets and liabilities of the parties; (j)the parties' contribution to education, training, or earning ability; (k) the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience ; (l) the parties' tax consequences for a spousal support award; (m) the parties' lost income production capacity that resulted from that party's marital responsibilities; and (n) any other factor that the court finds to be relevant and equitable.

{¶ 29} We note that the "trial court is not required to comment on each statutory factor; rather, the record must only show that the court considered the

statutory factors when making its award." *Comella v. Parravano*, 8th Dist. Cuyahoga No. 100062, 2014-Ohio-834, ¶ 13, citing *Neumann v. Neumann*, 8th Dist. Cuyahoga No. 96915, 2012-Ohio-591, ¶ 17, citing *Carman v. Carman*, 109 Ohio App.3d 698, 703, 672 N.E.2d 1093 (12th Dist.1996). Moreover, when considering a motion to modify a spousal support order, "'[t]he court need only consider the factors which have actually changed since the last order.'" *Id.*, quoting *Mizenko*.

{¶ 30} The magistrate, in the matter before us, issued a detailed opinion, specifically addressing all of the factors that applied to the parties. Husband argues, however, that his spousal support obligation should be terminated because of his retirement. He contends that the $2,500 per month spousal support award is unreasonable and inappropriate considering that he is retired, 71 years-old, in poor health, and has already paid Wife over $1,000,000 in support since 2011. Husband further argues that the court erred when it considered his speculative social security income and did not consider Wife's social security. He also argues the court should have considered the assets Wife's received as part of the divorce when imputing income. Whereas Wife argues that the trial court erred by reducing the spousal support because the court's imputation of $25,000 in income to her was incorrect, the amount of income and profit she is capable of is still unclear, the court did not consider her health issues, and the court failed to properly consider Husband's retirement income and assets.

{¶ 31} We find that the trial court did not abuse its discretion in upholding the magistrate's decision that Husband's retirement caused a change in

circumstance warranting a modification of spousal support. The evidence at the hearing revealed that Husband's approximate retirement income is anticipated at $63,700 from his prior employment, with his last paycheck being received in August 2019. Additionally, while Husband was not yet receiving social security benefits, he would be entitled to receive approximately $45,600 annually from social security. Thus, making his total post-retirement income approximately total of $109,300. Wife was not employed at the time of the divorce, nor at the time of the hearing on this matter. The court, however, imputed Wife income of $25,000 based upon her work history, investment in the restaurant and its potential, and her education. The court also noted that Wife will receive roughly $6,000 from social security at the age of 66 and 10 months for a total annual income of $31,000.

{¶ 32} Although Husband voluntarily retired, he did so at the age of 69 years old, with a change in hospital administration leadership and declining health. This constitutes a substantial change in circumstances that makes the existing award of $12,000 per month unreasonable, given his estimated post-retirement income reduced to $109,300 from $643,197. No evidence was presented that Husband retired to avoid his spousal support obligation. Rather, Husband informed Wife in November 2018 that he planned to retire. *Walpole v. Walpole*, 8th Dist. Cuyahoga No. 102409, 2015-Ohio-3238, ¶ 15, citing *Roach v. Roach*, 61 Ohio App.3d 315, 572 N.E.2d 772 (8th Dist.1989); *Tissue v. Tissue*, 8th Dist. Cuyahoga No. 83708, 2004-Ohio-5968 ("If a party is eligible to retire early and does not do so to defeat the spousal support obligation, then retirement can be considered as a legitimate

decrease in income for purposes of modifying spousal support."); *Mlakar v. Mlakar*, 8th Dist. Cuyahoga No. 98194, 2013-Ohio-100, ¶ 23, quoting *Robinson v. Robinson*, 12th Dist. Butler Nos. CA93-02-027 and CA93-03-047, 1994 Ohio App. LEXIS 1436, 2-3 (Mar. 4, 1994) ("While a voluntary retirement does not necessarily preclude a finding that an obligor spouse is voluntarily unemployed, *Drummer v. Drummer*, 3d Dist. No. 12-11-10, 2012-Ohio-3064, ¶ 31, a voluntary retirement 'does not bar consideration of [a party's] decrease in income when determining if there was a substantial change of circumstances.'") Here, the original spousal support award of $12,000 per month equaled approximately 44 percent of Husband's $527,677 annual income. The modified spousal support award of $2,500 per month also equals approximately 44 percent of Husband's post-retirement $109,000 annual income. We cannot say that the court abused its discretion when it reduced the support award by the percentage decrease in income. *See Fine v. Fine*, 8th Dist. Cuyahoga Nos. 96433, 96434 and 2012-Ohio-105, ¶ 10.

{¶ 33} With regards to Wife's argument regarding the court's imputation of income to her, we note that "the standard for imputing income to a spouse is to be determined by the spouse's employment potential, probable earnings based on the spouse's recent work history, job qualifications, and the prevailing job opportunities and salary levels in the community in which the spouse resides." *Marx v. Marx*, 8th Dist. Cuyahoga No. 83681, 2004-Ohio-3740, ¶ 32, citing *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218 (1993). At time of hearing, Wife's restaurant was just opening. According to Wife, she is the CEO of the restaurant and has invested

$635,000 in the restaurant. Wife also gives her adult son approximately $1,000 per month for his living expenses. Wife testified that he suffers from anxiety and PTSD from being bullied in high school. During their marriage, she operated a successful magazine and vintage purse business. Wife also received a substantial sum from Husband's mother around the time of the divorce.

{¶ 34} Based on the foregoing, which includes Wife's work history, investment into the restaurant and its potential, and her education, the magistrate found that Wife "with her education and her business sense is capable of producing income, however the amount is not clear at this time" and imputed an income of $25,000. We recognize that when imputing income for spousal support purposes "'[t]he end result is not to arrive at a specific figure so as to 'impute' income; rather, the end result is to consider and weigh the spouses' relative earning abilities along with the other factors in arriving at reasonable spousal support both as to amount and term.'" *Valentine v. Valentine*, 9th Dist. Medina No. 11CA0088-M, 2012-Ohio-4202, ¶ 5, quoting *Collins v. Collins*, 9th Dist. Wayne No. 10CA0004, 2011-Ohio-2087, ¶ 19. This is exactly what the court did in the instant case, and as a result, we do not find that the court abused its discretion when it imputed Wife an income of $25,000.

{¶ 35} In summary, the magistrate considered all factors and made findings for each, ultimately explaining how they impacted the decision to modify Husband's spousal support obligation, including all income sources, income derived from property divided, disbursed, or distributed pursuant to R.C. 3105.18(C)(1)(a), Wife's

capability to produce income, Wife's imputed income, Husband's estimated retirement income, the parties' social security benefits, Husband's "commendable" savings plan since the divorce, Wife's inability to testify as to what happened to some of the funds she received from the divorce, except for the funds she invested in the restaurant, Wife's mortgage-free home, and the time until Wife's retirement. "Where the record evidences the trial court's consideration of the statutory allocation factors, and 'the judgment contains details sufficient for a reviewing court to determine that the support award is fair, equitable, and in accordance with the law,' the determination will be upheld." *La Spisa v. La Spisa*, 2023-Ohio-3467, 225 N.E.3d 398, ¶ 116 (8th Dist.), quoting *Chattree v. Chattree*, 2014-Ohio-489, 8 N.E.3d 390 (8th Dist.), citing *Daniels v. Daniels*, 10th Dist. Franklin No. 07AP-709, 2008 Ohio App. LEXIS 772, 9 (Mar. 4, 2008), citing *Schoren v. Schoren*, 6th Dist. Huron No. H-04-019, 2005-Ohio-2102, ¶ 11.

{¶ 36} Finding that Husband's voluntary retirement qualifies as a substantial change in circumstances, we additionally find that this change in circumstance was not contemplated at the time the divorce was granted. Wife acknowledged this in a motion for discovery which stated, "Retirement was not debated and discussed[.]" (Motion, Apr. 8, 2019.) Thus, we do not find that the trial court abused its discretion when it modified Husband's spousal support obligation.

{¶ 37} Husband's first, third, and fourth assignments of error are overruled and Wife's second and third cross-assignments of error are overruled.

## 2. Indefinite Duration of Spousal Support

{¶ 38} In his second assignment of error, Husband argues that the trial court erred by ordering him to pay Wife $2,500 per month in spousal support indefinitely.

{¶ 39} Generally, spousal support awards should include a termination date, except in marriages of long duration or where the supported spouse lacks the ability to support his or herself. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 69, 554 N.E.2d 83 (1990). "This court has also held that generally, where the marriage is one of long duration of 20 years or more, a trial court may, under certain circumstances, award spousal support of an indefinite duration." *La Spisa*, 2023-Ohio-3467, 225 N.E.3d 398 at ¶ 107, citing *Mlakar*, 8th Dist. Cuyahoga No. 98194, 2013-Ohio-100 at ¶ 25, citing *Kunkle*; *Coward v. Coward*, 5th Dist. Licking No. 15-CA-46, 2016-Ohio-670, ¶ 10. But "[d]uration is only a factor and cannot be viewed in a vacuum." *Id.*, citing *Smith v. Smith*, 8th Dist. Cuyahoga Nos. 110214, 110245, and 110274, 2022-Ohio-299, ¶ 42 (court must also consider factors indicating whether spouse would have resources to be self-supporting).

{¶ 40} We find that the trial court did not abuse its discretion in awarding indefinite spousal support because marriage was of long duration (28 years) and statutory findings were supported by competent credible evidence. *See Thomasson v. Thomasson*, 8th Dist. Cuyahoga No. 108813, 2020-Ohio-3890, ¶ 18 (trial court's decision to award spousal support for indefinite duration was not an abuse of discretion based on competent credible evidence going to all statutory factors for establishing spousal support order.) The trial court had broad discretion to fashion

a support award that is appropriate and reasonable. Under the circumstances of this case, we unable to conclude the trial court abused its discretion.

{¶ 41} Thus, Husband's second assignment of error is overruled.

## C. The Stay of Collection and Disbursement of Spousal Support and Wife's Motions for an Accounting, Discovery, Sanctions, and a Continuance

{¶ 42} In the instant case, the trial court granted Husband's motion, seeking a stay of the collection and disbursement of spousal support on the second and final day of the hearing. The court also denied Wife's motions for an accounting, discovery, sanctions, and a continuance. Wife argues that the court erred when it granted the stay and denied her motions. Wife, however, fails to cite any authority in support of her arguments.

{¶ 43} "An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7)." *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 72, citing *State v. Martin*, 12th Dist. Warren No. CA99-01-003, 1999 Ohio App. LEXIS 3266 (July 12, 1999), citing *Meerhoff v. Huntington Mtge. Co.*, 103 Ohio App.3d 164, 658 N.E.2d 1109 (3d Dist.1995); *Siemientkowski v. State Farm Ins.*, 8th Dist. Cuyahoga No. 85323, 2005-Ohio-4295; *see also Victor v. Kaplan*, 2020-Ohio-3116, 155 N.E.3d 110, ¶ 102 (8th Dist.) (declining to review Husband's assigned error because he failed to cite any legal authority in support of his argument that the trial court erred). Indeed, "[i]f an argument exists that can support this assigned error, it is not this court's duty to root

it out.'" *Strauss* at ¶ 26, quoting *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, 22 (May 6, 1998).

{¶ 44} Therefore, Wife's fourth and fifth cross-assignments of error are overruled.

{¶ 45} Judgment is affirmed.

It is ordered that parties equally divide costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, P.J., and
EILEEN T. GALLAGHER, J., CONCUR